UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| B & D TECHNOLOGIES, LLC, | ) ) ) | |
| Plaintiff / Counter-Defendant, | ) ) ) | |
| v. | ) ) ) | Civil No. 4:23-11479-MRG |
| CURTIS INDUSTRIES, LLC, | ) ) ) | |
| Defendant / Counterclaimant, | ) ) ) | |
| v. | ) ) ) | |
| FAIRDALE FARM TRACTOR & EQUIPMENT CO., INC., | ) ) ) ) | |
| Counter-Defendant | ) ) | |

**ORDER ON DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS [ECF. NO. 38]**

**GUZMAN, J.**

In the underlying action, Plaintiff B & D Technologies, LLC ("B & D") alleges that multiple products owned by Defendant Curtis Industries, LLC ("Curtis") infringe on three patents owned by B & D. Curtis countersues B & D and Counter-Defendant Fairdale Farm Tractor & Equipment Co., Inc. ("Fairdale") for unfair competition under 15 U.S.C. § 1125(a) and Mass. Gen. Laws ch. 93A, and civil conspiracy.[1] Curtis now moves for partial judgment on the pleadings under Fed. R. Civ. P. 12(c). [ECF No. 38]. For the reasons stated below, the Court **GRANTS** the motion for partial judgment on the pleadings.

---

[1] While Fairdale is named as a counter-defendant in Curtis's First Amended Answer, the current action does not concern any allegations against them. [First Am. Answer, ECF No. 21].

I.   **<u>BACKGROUND</u>**[2]

B & D accuses Curtis of infringing three of B & D's patents relating to air conditioning systems and related products. [Compl. ¶ 3, ECF No. 1]. B & D alleges that four of Curtis's products infringe Claims 1, 3, and 4 of B & D's U.S. Patent No. 10,632,815 (the "'815 Patent"). [<u>Id.</u>; <u>See</u> ECF No. 1-4]. Similarly at issue are two of B & D's design patents, U.S. Design Patent No. D863,372 (the "D'372 Patent") and U.S. Design Patent No. D882,647 (the "D'647 Patent"), which B & D alleges three of Curtis's products infringe. [Compl. ¶ 3; <u>See</u> ECF No. 1-5; ECF No. 1-6]. The '815 Patent is a utility patent that "generally relates to an air conditioning system for open motorized vehicles, including a cab assembly to be installed on a vehicle." [Compl. ¶ 22]. The D'372 Patent claims an ornamental design for a mower cab with the following design:[3]



FIG. 1

---

[2] A motion for judgment on the pleadings views the factual allegations in the "light most favorable to the nonmovant," drawing all reasonable inferences in their favor. <u>Zipperer v. Raytheon Co., Inc.</u>, 493 F.3d 50, 53 (1st Cir. 2007) (citing <u>Aponte-Torres v. Univ. of P.R.</u>, 445 F.3d 50, 54 (1st Cir. 2006)). Therefore, the Court will draw the relevant factual background from B & D's initial complaint. [ECF No. 1].

[3] The patent design claims only the solid lines of the figure.

The D'647 Patent claims the following ornamental design of a cab roof:[4]



FIG. 1

In its motion for judgment on the pleadings, Curtis only challenges B & D's claims as to the D'327 and D'647 Design Patents, not the claims as to the '815 Patent. Curtis asserts that its three accused products do not infringe either of B & D's design patents. [Def. Mem. at 4, ECF No. 39].

## II.     LEGAL STANDARDS

The First Circuit has outlined that motions for judgment on the pleadings are "treated much like a Rule 12(b)(6) motion to dismiss." Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007)). The Court will only grant judgment on the pleadings "if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Zipperer, 493 F.3d at 53 (quoting Aponte-Torres, 445 F.3d at 54)). To survive a motion for judgment on the pleadings, the pleading "must

---

[4] The patent design claims only the solid lines of the figure. The second figure depicts a top-facing view of the patented design, with the front of the cab's roof depicted on the left and the back of the cab's roof depicted on the right.

contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and 'plausible on its face.'" Calixte v. David, 320 F. Supp. 3d 294, 297 (D. Mass. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## III.   DISCUSSION

### A.   Design Patent Infringement

To determine whether B & D states a plausible infringement claim as to the D'372 and D'647 patents, the Court follows a two-step analysis as outlined by the Federal Circuit. Curver Luxembourg, SARL v. Home Expressions Inc., 938 F.3d 1334, 1338 (Fed. Cir. 2019). First, the Court construes the scope of the design patent, "traditionally focus[ing] on the figures illustrated in the patent." Id. at 1339 (collecting cases). Second, it "compare[s] the accused products to the claimed design as construed to determine whether the products infringed." Id. at 1338. The Federal Circuit has highlighted that infringement is determined "by whether an 'ordinary observer' would find the design and accused product 'substantially the same.'" Colida v. Nokia, Inc., 347 F. App'x 568, 570 (Fed. Cir. 2009) (quoting Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc)). If an ordinary observer, "giving such attention as a purchaser usually gives," would determine that the "two designs are substantially the same [such that] the resemblance . . . [would] deceive such an observer, inducing [them] to purchase one supposing it to be the other, the first one patented is infringed by the other." Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc., 80 F.4th 1363, 1369 (Fed. Cir. 2023) (quoting Gorham Mfg. Co. v. White, 81 U.S. 511, 528 (1871)). If the claimed design and accused design are sufficiently distinct that it would be "clear without more that the patentee has not met [their] burden in proving the two designs would appear 'substantially the same' to the ordinary observer," the accused design does not infringe as a matter of law. Egyptian Goddess, 543 F.3d at 678 (quoting Gorham, 81 U.S. at

4

528). If the court determines that "plain differences" exist between the products, judgment on the pleadings would be proper. See, e.g., Anderson v. Kimberly-Clark Corp., 570 F. App'x 927, 933-34 (Fed. Cir. 2014) (affirming district court finding that "plain differences" between the accused products and patented design would not deceive an ordinary observer into thinking that the accused products are the same as the patented design).

The Federal Circuit has repeatedly emphasized that general conceptual similarity between a claimed design and an accused product does not sufficiently demonstrate infringement. See Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1336 (Fed. Cir. 2015) ("Similarity at this conceptual level, however, is not sufficient to demonstrate infringement of the claimed designs."). In Ethicon Endo-Surgery, the court noted that while the claimed design and the accused product shared similar features at a general conceptual level, any features in common that share a functional aspect must be excluded from the "scope of the design claims at this general conceptual level." Id. The Federal Circuit affirmed the district court's identification of physical dissimilarities between the products; the claimed design had an "overall contoured shape" whereas the accused product had an "overall linear shape." Id. The focus on this "most obvious difference," and other physical dissimilarities led the Federal Circuit to affirm the district court's finding of non-infringement as a matter of law. Id.

The patentee's claimed product (left) and the accused product (right) in Ethicon Endo-Surgery are depicted below:

5



D'804 patent, Fig. 1        Covidien's accused product

Id. at 1335.

Similarly, in Colida v. Nokia, Inc., the Federal Circuit affirmed the district court's finding that functional aspects of a claimed product must be excluded from the scope of design patents. 347 F. App'x at 571. In that case, the claimed product and accused product shared a folding design, but that functional folding element could not be considered in the court's side-by-side analysis because it was outside of the design patent's scope. Id. In determining that the district court properly found non-infringement, the Federal Circuit emphasized that "the dissimilarities far exceed the similarities." Id.

The claimed product (left) and accused product (right) in Colida are depicted below:



Id. at 570.

Ethicon Endo-Surgery and Colida demonstrate that even when there are similarities between a claimed design and an accused design in terms of overall appearance at a broad conceptual level, the similarities may be insufficient to demonstrate infringement. This is especially true in light of the Federal Circuit's mandate to exclude general conceptual similarities, as well as any functional aspects, when construing a design patent's scope for the purposes of a side-by-side analysis.

    1.    *The D'327 Patent*

B & D accuses three of Curtis's products of infringing the D'327 Patent. The products B & D accuse of infringement are the John Deere Z994R (the "John Deere"), the Ferris ISX3300 (the "Ferris"), and the Kubota ZD1211 (the "Kubota"). [See ECF No. 1-5]. B & D alleges that the similarities between their D'327 Patent and the three accused Curtis products are "striking, unmistakable, and can only be the result of intentional copying." [Compl. ¶ 58].

In its opposition to Curtis's motion for judgment on the pleadings, B & D asserts that there are "few, if any, aftermarket lawnmower cabs prior to the claimed designs." [Pl.'s Opp. At 7, ECF No. 40]. B & D asserts that the lack of aftermarket lawnmower cabs prevents the Court from comparing smaller differences between the claimed design and accused products beyond an abstract level. [Id.]. In its reply, Curtis disputes B & D's claim that "few, if any, aftermarket lawnmower cabs" exist on the market as conclusory and irrelevant. [See ECF No. 41-1 at 3].

The Court agrees with Curtis for two reasons. First, B & D's assertion that there are few, if any, aftermarket lawnmower cabs prior to the claimed design is controverted by the many prior-art references listed by the D'372 and D'647 patents. Second, as explained below, comparison to the prior art is not necessary for this motion because the designs are plainly dissimilar. As Curtis points out, even if there were no prior-art references on the market, "comparing the claimed and

accused designs with the prior art is beneficial *only when the claimed and accused designs are not plainly dissimilar*." Ethicon Endo-Surgery, 796 F.3d at 1337 (emphasis added) (citation omitted). In other words, the Court may rely on other art references or products on the market to discern differences only if plain dissimilarities are **not** present between the claimed and accused designs.

If the two designs are not plainly dissimilar in the abstract, examples of similar prior art designs may be used to differentiate smaller differences between a claimed design and accused product. See Egyptian Goddess, 543 F.3d at 678. It is the burden of the accused infringer to "call to the court's attention the prior art that an ordinary observer is most likely to regard as highlighting the differences between the claimed and accused design." Id. at 679. However, Egyptian Goddess affirms the Court's view that even if an accused infringer does not rely on prior art to compare differences between a claimed design and accused product, the burden nonetheless remains with the patentee to demonstrate infringement in the first place. Id. Therefore, even if Curtis does not rely on prior art references to point out smaller differences, plain dissimilarity at a side-by-side comparison would still be enough to demonstrate that B & D has not met their initial burden for infringement.

The Court will perform a side-by-side comparison of the claimed design and the design of each of Curtis's accused products, which shows that the designs are plainly dissimilar.

   a. *The John Deere – D'327 Patent*

The claimed design (left) and John Deere (right) are depicted below:

 

Conceptually, the claimed design and the John Deere have similarities to one another. But conceptual similarity, as noted before, is not enough to demonstrate infringement, especially if the similarities relate to a functional feature. See Ethicon Endo-Surgery, 796 F.3d at 1336.

Both the claimed design and the John Deere generally have four walls that enclose the cab. However, as Curtis correctly points out, the fact that the design has four walls enclosing the cab is a functional feature of the air-conditioning enclosure system that serves to create an interior environment closed off from the outside environment. [Def. Mem. at 17; Compl. ¶ 31]. In fact, B & D's '815 Patent covers "[a]n enclosure system for a lawn mower in claim 1." [Compl. ¶ 43]. Thus, the fact that both the claimed design and accused design share four walls cannot be used to point out similarity between the two because the four walls creating an enclosure system relates to the functionality of the '815 Patent. The Federal Circuit has highlighted that district courts should distinguish between features of the claimed design that are ornamental and those that are functional, and only consider the ornamental features of the design patent. See Egyptian Goddess, Inc., 543 F.3d at 680. Therefore, the Court disregards the fact that the claimed design and the John Deere share a four-walled enclosure. Instead, the Court considers only the ornamental features of the design patent.

Beginning with the front surface, the claimed patent is entirely linear, containing a straight edge and ending with notches on the bottom. The John Deere has a front surface that converges outward and ends at the bottom without the notches shown in the claimed patent. The sidewalls of the claimed design hardly resemble the sidewalls of the John Deere. Aside from an overall dissimilarity in the appearance of the sidewall lines, the claimed design features distinctly angled lines, whereas the John Deere appears to have more curved lines. These differences are plain dissimilarities.

Accordingly, the Court determines that B & D has not met its burden of proving infringement as a matter of law due to the plain dissimilarities between the claimed design of the D'372 Patent and the John Deere. See Ethicon Endo-Surgery, 796 F.3d at 1335-37 (affirming district court's identification of obvious differences between the claimed and accused designs and determining that patentee did not meet burden of proving infringement as a matter of law).

  b. The Ferris – D'327 Patent

The claimed design (left) and the Ferris (right) are depicted below:

 

As with the John Deere, there are conceptual similarities between the two products. However, much like the comparison between the claimed design and the John Deere, the

dissimilarities of the two products are stark. The front surface of the Ferris is hexagonal and does not contain notches at the bottom like the claimed design. The front surface of the claimed design, apart from the notches, is quadrilateral and slopes inward from the top to the bottom. The Ferris slopes outward and then inward from the top to the bottom. Additionally, the line connecting the front and the side of the claimed design completely adjoins the two surfaces with no gap in between. The Ferris contains a gap towards the bottom of the corresponding connector that separates the two surfaces.

The plain dissimilarities between the overall appearance of the claimed design and the Ferris prevent B & D from asserting infringement as a matter of law. See Egyptian Goddess, 543 F.3d at 678.

c. The Kubota – D'327 Patent

The claimed design (left) and the Kubota (right) are depicted below:

 

The Court acknowledges the conceptual similarities between the claimed design and the Kubota, as outlined in both the John Deere and the Ferris comparisons. Once again, however, the obvious differences in appearance between the two products is such that an ordinary observer would not be deceived into thinking they are the same.

The Kubota contains a similar front surface as the John Deere. The front of the Kubota converges outward and does not contain notches at the bottom. This is in stark contrast to the claimed design, which is completely linear and contains notches. The side surface of the Kubota contains sloped lines whereas the side surface of the claimed design contains linear, straight lines.

As with the John Deere and the Ferris, the Court finds that the plain dissimilarities between the two products would not enable an ordinary observer to be deceived into thinking they are the same. See Columbia Sportswear N. Am., 80 F.4th at 1369 (quoting Gorham, 81 U.S. at 528). Accordingly, B & D has not met their burden in alleging infringement as a matter of law.

Since the Court finds that all three of the accused Curtis products are plainly dissimilar from the patented design, it **GRANTS** Curtis's motion for judgment on the pleadings as to the D'327 Patent.

    2.  *The D'647 Patent*

B & D accuses the same three Curtis products (the John Deere, the Ferris, and the Kubota) of infringing the D'647 Patent. [See ECF No. 1-6]. The D'647 Patent covers the ornamental design for a cab roof. In its filings, B & D asserts that all three products have "substantially similar design[s]" to one another when viewed from above. [See ECF No. 1-6 at 3, 7, 11]. B & D's complaint included the same figure of the Curtis Ferris Cab's roof as a representation of the top view of the roof for all three accused products (the John Deere, the Ferris, and the Kubota). [ECF No. 1-6]. But in its opposition to Curtis's motion for judgment on the pleadings, B & D attempts to assert – for the first time – that the three accused products do not contain the same features, more specifically, that the roof of each is different from the others. [Pl.'s Opp. at 13-14]. B & D states that its complaint "only showed the top of the Ferris cab roof due to the lack of [available] images showing the tops of the [other accused products]," and that this absence of images makes

the differences between the roofs of the different cab models a "genuine material question of fact that cannot be resolved based solely on the pleadings." [Id. at 13]. However, B & D fails to mention that its own complaint asserts that the top view of the John Deere and the Kubota "ha[ve] substantially similar design[s]" to the Ferris and includes the same picture of the Ferris throughout its side-by-side comparisons of the other accused products. [See ECF No. 1-6 at 3, 7, 11].

"The fate of a motion [evaluated] under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint." Young v. Lepone, 305 F.3d 1, 10-11 (1st Cir. 2002). While there are some instances where the Court may consider documents outside of the complaint that were attached to a complaint or incorporated by reference therein, neither instance applies here. See id. It is well settled that the proper procedure for introducing new arguments is to amend their complaint pursuant to Fed. R. Civ. P. 15(a). Curtis's motion for judgment on the pleadings relied on the factual allegations in the four-corners of B & D's complaint. B & D may not now assert that Curtis's reliance on the factual allegations in the complaint is faulty. Further, B & D has not satisfactorily explained its own contradiction in now stating the roof designs across the three products are different when it originally argued that the three products "ha[ve] substantially similar design[s]." [ECF No. 1-6 at 7, 11]. Even assuming *arguendo* that B & D's complaint did not allege the accused products' roofs were similar, the Court is nonetheless unconvinced that the D'647 Patent and the three accused products share enough substantial similarity to one another for there to be a claim for infringement. Nor is the Court convinced that B & D would meet the standard to amend their complaint with new exhibits demonstrating the supposed differences between the claimed design and accused products.

However, since B & D asserts in its complaint that the above-view of the three accused products share substantial similarity, the Court will still conduct a side-by-side analysis of the three products to the D'647 Patent together.

The claimed design (left) and the accused product (right) are depicted below:



The front of the claimed design and the front of the accused product both start with straight lines. In the claimed design, the sides angle outward, then continue in a straight line towards the back of the cab. In the accused product, the sides angle outward, then continue inward instead of in a straight line. The accused product's slanting sides are in direct contrast to the straight sides of the claimed design. They are entirely different shapes.

Additionally, the claimed design includes a portion of the roof extends to the back and covers the air conditioning unit that is affixed to the back of the cab. The accused product is entirely hexagonal and does not extend to cover any portion of the air conditioning unit affixed to the back. The designs are plainly dissimilar in this aspect, as they cover completely different portions of the cab from each other. B & D asserts that an ordinary observer would not assume the top of the air conditioning cover to be a separate component excluded from the roof design. [Pl.'s Opp. at 16]. The Court is unconvinced. The D'647 Patent design appears to be one flat piece across the roof in

its entirety. The Curtis products appear to have roofs that cut off prior to the air conditioning unit affixed to the back. None of the images of the Curtis products show a roof that covers the air conditioning unit in one flat piece as claimed in the D'647 Patent.

The accused Curtis products contain further differences to the D'647 Patent. The following depiction includes B & D's D'647 Patent (above) compared to the accused products (below):



 

The claimed design features a relatively thick side of the cab roof that extends downward compared to the thinner sides of the accused products' cab roofs. The thickness of the side of the cab roof is a relatively distinguishable feature of the claimed product, and a feature none of the

15

three accused Curtis products contain. This physical dissimilarity is an obvious difference. See Ethicon Endo-Surgery, 796 F.3d at 1336 (distinguishing the claimed product and accused product based on the overall shape of the products). Overall, an ordinary observer would not be likely to be deceived into thinking that the claimed cab roof is the same as any of the accused Curtis products. See Columbia Sportswear N. Am., 80 F.4th at 1369 (quoting Gorham, 81 U.S. at 528).

Accordingly, the Court finds that B & D has not met its burden in asserting that Curtis infringed their D'647 Patent. Therefore, the Court **GRANTS** Curtis's motion for judgment on the pleadings as to the D'647 Patent.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Curtis's motion for partial judgment on the pleadings as to the D'327 and D'647 Patents. B & D also alleges that Curtis infringes their '815 Patent, and as Curtis has not filed their motion for judgment on the pleadings for that claim, that claim survives.

**SO ORDERED.**

Dated: December 13, 2024

                                              /s/ Margaret R. Guzman
                                              Margaret R. Guzman
                                              United States District Judge